## BEHRMANN v. MARCUS.

(Supreme Court, Appellate Term.  November 29, 1907.)

1. BROKERS—COMPENSATION—WHEN EARNED.

> Where a purchaser procured by a real estate broker refuses to accept the contract proposed, and no contract of purchase is executed, the broker cannot recover commissions, whether defendant, who employed him, had an option on the property or a mere authorization to sell it.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 55.]

2. SAME—EVIDENCE—ADMISSIBILITY.

> Where, in an action by a real estate broker for commissions for procuring a purchaser of real estate, it appeared that the terms of sale were not given by defendant at the time the broker was employed, evidence of occurrences at the meeting of the parties resulting in the purchaser refusing to accept the contract proposed was admissible, whether defendant had an option on the property, or had mere authority to sell it.

Appeal from Municipal Court, Borough of the Bronx, First District.

Action by John J. Behrmann against Samuel Marcus.  From a judgment for plaintiff, defendant appeals.  Reversed, and new trial ordered.

See 102 N. Y. Supp. 467.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Abraham J. Herrick, for appellant.
Willoughby B. Dobbs, for respondent.

GILDERSLEEVE, P. J.  The plaintiff and the defendant are real estate brokers.  Messrs. Friedman & Raff owned property at 228th street and the White Plains Road, in the borough of the Bronx, which they desired to sell.  The action was brought to recover the sum of $150 as commissions for procuring for the defendant a purchaser of said property.  The pleadings are oral.  The plaintiff alleges "commissions," and the defendant "denies every allegation contained in the complaint."  The judgment is for $150 and costs.  Defendant appeals.

It is undisputed that on December 13, 1905, the defendant called at plaintiff's office and told him that, if plaintiff would sell the property in question that day for $9,200, he would give him a commission. The parties disagree as to the amount of the commission promised by the defendant.  The conclusion we have reached renders the issue on that point unimportant.  It appears from an exhibit introduced by defendant that he was authorized by the owners to offer the property for sale at $9,200, good until December 13, 1905, for which he was to have a commission of $200 when the sale was effected.  The plaintiff testifies that defendant stated that he had an "option" on the property.  The defendant swore that he told the plaintiff that he had an "authorization" to sell the property.  Whatever the truth may be as to what was said, by reason of the conversation that took place plaintiff procured one Houlihan as a prospective purchaser and gave defendant a check for $50 or $100 (the amount does not clearly

appear) to bind the trade, and made an appointment to meet that afternoon at 3 o'clock for the purpose of executing a formal contract of purchase and sale. The parties met, pursuant to appointment, at the office of Mr. Stone, a lawyer representing the owners. There were present the plaintiff and defendant; Mr. Houlihan, his lawyer, Mr. O'Hara, Mr. Stone, and the owners, Friedman & Raff. Mr. O'Hara, on behalf of Mr. Houlihan, would not accept the contract that was proposed to be given, and no contract was executed. Mr. O'Hara, when called by plaintiff in rebuttal, so testified. It appears that Mr. Houlihan was a man of means, ready, able, and willing to make the purchase; but the testimony is fatally defective in failing to show his willingness to buy upon the terms proposed.

As nearly as can be gathered from the record, the learned trial justice concluded that the defendant represented to the plaintiff that he had an "option" on the property, and did not credit the defendant's testimony, in which he said he had "an authorization." Having assumed this fact, the court evidently further concluded that the defendant was acting in the capacity of principal, and the plaintiff, in producing Mr. Houlihan, brought forward a purchaser ready, able, and willing to enter into a contract, and therefore defendant was liable upon his promise to pay the plaintiff a commission. This state of facts, if established, did not make the defendant liable. The trial court seems to have overlooked an essential element to the creation of a liability for a commission under the circumstances, viz., an agreement between the purchaser and vendor upon the terms of sale. Unless their minds met on this point, no sale was effected and no commission earned. This is true, whether the defendant did or did not hold an option. The trial court excluded substantially all that occurred at Mr. Stone's office when the meeting took place for the purpose of executing the contract. The record contains the following statements by the court:

"It is in the testimony that the party was willing, ready, and able, and it has not been denied by your people. It is admitted on both sides."

And again:

"Mr. Behrmann testified, correctly or not, that he was there. They came down with a certified check, and it is not denied that he went there with the certified check, and Mr. Marcus employed him to sell this property—not Mr. Raff or somebody else. Mr. Marcus either employed him, or did not employ him. That is the position."

And again:

"I will exclude all testimony as to any proposed contract being entered into at that office, on the ground that Mr. Marcus told Mr. Behrmann to sell this property."

And again:

"I will not allow anything to go into the record that took place down there in reference to selling this property. * * * I do not care anything about it."

This ruling was error. The occurrences at Mr. Stone's office bearing upon the question of the meeting of the minds of Houlihan and

Friedman & Raff were competent and material. Complete terms of sale were not stated by defendant at either of the interviews between plaintiff and defendant. They had to be fixed, even if defendant held an option and was acting in his own behalf. Mr. Stone's office was the place named for settling the business. The plaintiff's testimony in reference to the amount of cash to be paid is that the defendant said: "I guess $500 is sufficient." He had already paid a deposit of $50 or $100, and yet told Houlihan to bring down a certified check for $500. This would make a payment of $550 or $600. There is no evidence of any definite statement by the plaintiff of the amount of cash required to close the transaction. Considering the testimony in the most favorable light for the plaintiff, it cannot be truthfully said that the minds of the parties had met on all the terms of the sale. No agreement had been reached by which Houlihan had assented to the amount of mortgages, the character of the deed, or the time for closing the title. This court said, in reversing a judgment in this case on a former appeal (102 N. Y. Supp. 467):

"Thus the transaction dropped, upon the failure of the plaintiff to produce a purchaser ready and able to buy the property upon the terms laid down by the sellers."

It may be repeated in disposing of the present appeal. For the reasons above stated, the judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.